234 P.2d 821

HARRIS et al. v. DUNN et al.

No. 5342.

Supreme Court of New Mexico.

Aug. 9, 1951.

Frank L. Horan, Perry S. Key, Albuquerque, for appellants.

Rueckhaus & Watkins, Albuquerque, for appellees.

SADLER, Justice.

The question for decision is whether 1941 Comp. § 75–143, L.1949, c. 19, declaring void, unless in writing, all agreements made subsequent to July 1, 1949, employing an agent to purchase or sell real estate for a commission or compensation bars equitable relief against one agreeing to purchase certain land for another but in violation of his promise and understanding purchases it for himself, taking title in the name of others in an effort to conceal the fraudulent breach of his agreement.

The defendants, appellees here, being J. R. Dunn, doing business as Dunn Realty, and Wilburn G. Moore and Ingeborg

Moore, in whose names title to the real estate involved had fraudulently been taken in consummation of the fraud, as alleged in the amended complaint, although answering by way of general denial, all joined in a motion to dismiss the complaint alleging facts as set forth in the first paragraph hereof. The grounds of the motion were that the defendant, Dunn, being a duly licensed real estate broker, the provisions of the act in question, cited above, were applicable and required that any employment of him, to purchase lands for the plaintiffs, must be evidenced by a written instrument.

The motion was duly argued before the trial court and at the conclusion of the argument it was sustained and the complaint dismissed. The plaintiffs prosecute this appeal for the revision and correction of such judgment. Although numerous errors are assigned, all will be resolved by a determination of the single question whether the trial court correctly held the relief here sought was properly denied under the act in question, viz., 1941 Comp. § 75–143, L.1949, c. 19, § 1.

This act so far as material reads, as follows: "Section 1. Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein."

In our opinion this case is ruled by our decision in Mitchell v. Allison, 51 N.M. 315, 183 P.2d 847, 848. See, also, same case reported on second appeal under title, Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231, and Rice v. First National Bank, 50 N.M. 99, 171 P.2d 318. The facts in Mitchell v. Allison are almost on all fours with the facts of this case and after exhaustive research and thorough consideration of the first appeal, we held:

"There is a conflict of authority as to whether an agent verbally employed to buy specific real estate, who purchases it for himself or a third person with the agent's own funds, may be compelled to deliver title to his principal or respond in damages for his breach of the agreement. The authorities are collected in annotations in 42 A.L.R. 10; 54 A.L.R. 1195, and 135 A.L.R. 232.

"While courts are divided on the question; the weight of authority, and the trend of recent decisions, are to the effect that such agreements are not within the statute of frauds. This is the conclusion

·of such outstanding authorities as Williston, Pomeroy, Scott and the Restatement.

\* \* \* \* \* \*

"The theory of the rule we follow is that such agreements create a relation of trust and confidence to which the statute of frauds does not apply.

"The cases on the question, pro and con, are so numerous (see Annotations in A.L.R. cited) that we content ourselves with citing the following which support the rule adopted: Harrop v. Cole, 85 N.J.Eq. 32, 95 A. 378, affirmed in 86 N.J.Eq. 250, 98 A. 1085; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173; Lamb v. Sandall, 135 Neb. 300, 281 N.W. 37."

The defendants seek to deny Mitchell v. Allison force as a precedent by pointing out that at the time it was decided and, hence, at the time of the events out of which the suit arose, the statute here involved and relied upon by them had not been enacted. The attempted distinction is not persuasive. True enough, the events adjudged in Mitchell v. Allison took place before the statute was adopted while those here before us occurred subsequently. But after admitting this, the distinction between the two cases ends and the analogy begins. Both deal with the effect of a statute calling for a writing, the one relied on in Mitchell v. Allison being the Statute of Frauds, whereas that here involved is the so-called Real Estate Brokers' Act, dealing with agreements for compensation or commission on the sale or purchase of real estate procured through an agent. Just why the Statute of Frauds should be less effective to void a contract in the one case than the Brokers' Statute in the other, counsel for defendants have been unable to point out. And, yet, the former statute was held not to bar the remedy sought in Mitchell₁ v. Allison. There are no valid grounds of distinction between the two cases.

Indeed, the Act relied upon by defendants does not purport to render void every agreement respecting the sale or purchase of real estate in which an agent has had a part, unless in writing. It seems clear enough that what the legislature intended to nullify was *oral agreements to pay a commission.* As said by the Supreme Court of Wisconsin in Krzysko v. Gaudynski, 207 Wis. 608, 242 N.W. 186, 189, in dealing with a statute of that state similar to ours: "The purpose of the statute was not to relieve real estate agents from their obligations as agents, but to protect the public against frauds perpetrated by dishonest agents through falsely claiming oral contracts of agency when another agent effected a sale by which the landowner was subjected to claims for commission by two or more agents, and by falsely claiming agency and claiming a commission for procuring a purchaser when no bona fide purchaser was in fact procured. One may

become an agent without compensation. Absence of compensation is immaterial."

See also Stephenson v. Golden, 279 Mich. 710, 276 N.W. 849, and cases cited in annotations of subject generally in 42 A.L.R. 10; 54 A.L.R. 1195 and 135 A.L.R. 232.

Counsel for defendants place great reliance on the case of Carkonen v. Alberts, 196 Wash. 575, 83 P.2d 899, 917, 135 A. L.R. 209. There, in construing a statute like ours, the court declined to hold an agent was a constructive trustee who purchased for himself real property he was commissioned to purchase for his principal. It is a sufficient answer to say that the division of authority pointed out by us in Mitchell v. Allison and treated at length in the A.L.R. annotations there cited places Washington on the side of the fundamental question at issue which we deliberately declined to follow in that case. See, Annotation in 42 A.L.R. 10(29). In other words, if we had been persuaded to adopt the line of authority defendants urge upon us, citing Carkonen v. Alberts as an example, we would have decided Mitchell v. Allison the other way. The Washington court sees in actions of an agent such as those here disclosed and present in the case before it in Carkonen v. Alberts only *moral wrong,* not *legal fraud.* So viewing the matter, it reached the conclusions announced touching the effect of a statute similar to ours. In a strong dissent Chief Justice Steinert said of the majority view:

"My consideration of the majority opinion, in its entirety, convinces me that it is wrong. I think that the case falls squarely within the principle expressed by the majority in the following language: 'The authorities uniformly hold that the agent purchasing the land will not be permitted to keep the property he has obtained where circumstances, apart from a mere breach of an oral agreement to convey to another, render it inequitable that he should do so. The same rule, of course, is applicable to the procceds received by the agent from his sale of the land.'

"This case does not present 'a mere breach of an oral agreement to convey to (or purchase for) another.' If the allegations of the complaint be true, as the demurrer admits, then, in my opinion, it is a case of arrant fraud, and the 'circumstances * * * render it inequitable' that the agent should 'be permitted to keep the property' or retain 'the proceeds received by the agent from his sale of the land.' According to the complaint, respondent Alberts, under agreement to act as broker on commission to be paid by appellant, straightway proceeded to have himself engaged as broker for the owner of the land upon a commission to be paid by him. Then, false to both parties, he bought the property for himself, under an assumed name, at a price of two thousand dollars less than the amount which he was commissioned to pay for it and then sold it for

two thousand dollars more than the initial principal's authorized price, thus inflicting a loss of two thousand dollars upon each of his principals and appropriating a neat profit of four thousand dollars plus a commission to himself. If that be not rank fraud, then I am unable to assign a word for it. A host of the authorities cited in the majority opinion sustain my view."

It is suggested that certain California cases, namely, Heyn v. Philips, 37 Cal. 529, and McCarthy v. Loupe, 62 Cal. 299, one decided before and the other after enactment of Cal.Civ.Code, § 1624(5), similar to the statute before us, are precedents against the conclusion we have reached. The Heyn case merely holds that a contract employing an agent to sell certain land of the owner at an agreed price, the latter agreeing to sell and convey same to the purchaser if one were secured within the stipulated time, was a contract of employment and not one for the sale of any land or an interest therein within the Statute of Frauds. Likewise, McCarthy v. Loupe, supra, decided after enactment of Cal.Civ.Code, § 1624(5) declaring invalid oral contracts of brokers to sell or purchase real estate for another simply holds that the oral contract to sell another's land, even where successfully performed, would not support recovery of the agreed commission sued for. Both cases involved suits to recover commissions under oral agreements to pay them for selling real estate. We approve the holding in each. If either had been a suit by the principal, as in this case, to redress a fraud against him by his agent as, for instance, the purchase for himself of the land he had been commissioned to purchase for his principal, we believe the California courts would have decided the case as we decided Mitchell v. Allison, supra, and as we are deciding this case. See, Stromerson v. Averill, 22 Cal.2d 808, 141 P.2d 732.

■■ Statutes such as the one here involved are but extensions and enlargements of the Statute of Frauds. Mason v. Abel, Tex.Civ.App., 215 S.W.2d 377. And the California courts are in agreement with this court in declining to permit the Statute of Frauds to be converted into an instrumentality of fraud. Brenneman v. Lane, 87 Cal.App. 414, 262 P. 400; Halsey v. Robinson, 19 Cal.2d 476, 122 P.2d 11; Le Blond v. Wolfe, 83 Cal.App.2d 282, 188 P.2d 278, and Monarco v. Lo Greco, 35 Cal.2d 621, 220 P.2d 737. Such has been the holding of this court for many years in a variety of factual situations. Harris v. Hardwick, 18 N.M. 303, 137 P. 581; Osborne v. Osborne, 24 N.M. 96, 172 P. 1039; Wooley v. Shell Petroleum Corp., 39 N.M. 256, 45 P.2d 927; McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250; Schauer v. Schauer, 43 N.M. 209, 89 P.2d 521, and Ritter-Walker Co. v. Bell, 46 N.M. 125, 123 P.2d 381. It would be error, upon proof of the facts

alleged, for the court to decline to hold defendants constructive trustees for the use and benefit of plaintiffs and to refuse to order appropriate conveyances upon plaintiffs making good their tender into court of the purchase price of the property in question and such other reasonable amounts for purchasers' expenses as the court may order under plaintiffs' tender.

It follows from what has been said that the trial court erred in dismissing the plaintiffs' complaint. Its judgment will be reversed and the cause remanded to the district court of Bernalillo County with a direction to set aside its judgment and for further proceedings in conformity with the views herein expressed. The plaintiffs will recover the costs of the appeal.

It is so ordered.

McGHEE and COORS, JJ., concur.

LUJAN, C. J., and COMPTON, J., dissenting.

LUJAN, Chief Justice (dissenting).

In my opinion this case is not ruled by our decision in Mitchell v. Allison, 51 N.M. 315, 183 P.2d 847, handed down two years prior to the enactment of the Act in question. Prior to 1949 an agreement authorizing or employing an agent or broker to purchase or sell real estate for a commission or compensation did not have to be in writing as is now required by law. We there held that contracts for the employment of an agent or broker to buy or sell real estate were not regarded as within the operation of the English statute of frauds for the reason that they were not included therein. However, Section 1, Chapter 19, of the Session Laws of 1949, expressly requires such agreements to be in writing. It provides: "Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements or hereditaments or any interest in or concerning them, for a commission or other compensation, *shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person* thereunto by him lawfully authorized." (Emphasis mine.)

The majority opinion says: "It seems clear enough that what the legislature intended to nullify was *oral agreements to pay a commission.*" If the legislature had intended to have the Act operate as contended by the majority, it would have employed language different than that now in the act. The intent is so clearly and unambiguously expressed that there is no room for the office of construction; and no standard should be held sufficiently strong to lead to a construction of this Act which does not give effect to the plain legislative intent.

"Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe." Lewis v. United States, 92 U.S. 618, 621, 23 L.Ed. 513.

"Unless there is ambiguity in a statute, construction is uncalled for." Atlantic Oil Producing Co. v. Crile, 34 N.M. 650, 287 P. 696.

The question of whether or not the employment of an agent or broker to purchase or sell real estate for commission or compensation was required under the Statute of Frauds, to be in writing prior to the passage of Section 1624 of the California Civil Code, came before the Supreme Court of that State in Heyn v. Philips, 37 Cal. 529. The same question was before this court in Mitchell v. Allison, supra. The court, speaking through Chief Justice Sawyer, said:

"The question in this case is, whether the contract sued on and proved is a contract 'for the sale of any lands, or interest in lands,' within the meaning of the eighth section of the Statute of Frauds, and which is required to be in writing, and subscribed by the party to be charged.

"* * * * * * *

"It does not appear to us that this is a contract for the sale of land, or an interest in land, within the meaning of the Stat-ute of Frauds. It was a mere contract of employment between the plaintiff and defendant. There was no sale of land from the defendant to the plaintiff. The plaintiff was simply employed to find a purchaser for defendant's land at a given price to be realized by defendant, and the compensation to be received by plaintiff was to be such sum as he could get for the land over the given price.

"* * * * * * *

"The contract was substantially one of employment to find a purchaser of land, and not as between the parties a sale or agreement to sell land, or any interest in land."

Subsequent to the rendition of the opinion in the above case, the California Legislature passed Section 1624, which provides: "An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; * * * [is] invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent".

In passing upon this provision, the court in McCarthy v. Loupe, 62 Cal. 299, 303, said: "Since the Code, no express contract in a case like this can be of any avail unless in writing. This particular kind of contract can only be proved by the introduction of an instrument in writing. Therefore, the plaintiff failed to prove an

express contract, and it was upon an express contract alone that he was entitled to recover."

See also Myers v. Surryhne, 67 Cal. 657, 8 P. 523; Proulx v. Sacramento Valley Land Co., 19 Cal.App. 529, 126 P. 509; Holland v. Flash, 20 Cal.App. 686, 130 P. 32; Weatherhead v. Conney, 32 Idaho 127, 180 P. 760; Peters v. Martin, 69 Ind.App. 436, 122 N.E. 16; Nelson v. Webster, 83 Neb. 169, 119 N.W. 256; Leimbach v. Regner, 70 N.J.L. 608, 57 A. 138; Lueddemann v. Rudolf, 79 Or. 249, 154 P. 116, 155 P. 172; Baugh v. Darley, 112 Utah 1, 184 P.2d 335.

Washington has a statute similar to the California Act and ours. The Supreme Court of that state, in construing theirs in Carkonen v. Alberts, 196 Wash. 575, 83 P.2d 899, 902, 135 A.L.R. 209, said:

"Is appellant's oral agreement employing respondents as agents or brokers to negotiate on appellant's behalf the purchase of real estate under the ban of that portion of the Statute of Frauds, reading as follows? 'In the following cases specified in this section, *any agreement,* contract and promise *shall be void,* unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized; that is to say; * * * *an agreement* authorizing or *employing* an *agent* or *broker* to sell or *purchase* real estate for compensation or a commission.' Rem.Rev.Stat. § 5825. (Italics ours.)

\* \* \* \* \* \*

"The insuperable obstacle to enforcement of respondents', oral promise to negotiate purchase of land for appellant is the provision of the statute * * * of frauds that an *agreement employing an agent* or *broker to sell* or *purchase* real estate for compensation *shall be* void unless such agreement be *in writing* and *signed* by the party to be charged therewith. That provision applies to contracts between the owner of the land to be sold and the agent he employs to make or *negotiate* the sale, and that provision also applies to a purchaser of land or one desiring to purchase land and the agent he employs to make the purchase or negotiate the purchase for him. The statute declares, without qualification, that an oral agreement employing an agent or broker *to sell or purchase* real estate for compensation or a commission shall be void. If the legislature intended to limit the statute to contracts between brokers and sellers and intended to exclude contracts between brokers and purchasers, it would have employed language different than that now in the statute."

See also Dooly v. Pinson, 145 Ala. 659, 39 So. 664, Hackney v. Butts, 41 Ark. 393.

In construing their statute the Supreme Court of Michigan in Slocum v. Smith, 195 Mich. 281, 161 N.W. 830, said: "The history of the reasons leading up to this legislation is persuasive that the law was intended to apply to an agreement for a purchase as well as a sale because one is a necessary complement of the other. Both are clearly within the mischief which was intended to be remedied by the Legislature, and we think a reasonable and liberal construction of the statute will make it apply to an agreement for a purchase as well as to a sale of real estate."

To the same effect is the interpretation of statutes similar to ours by the courts of other states. The text books American Jurisprudence, Corpus Juris Secundum, Restatement of Law and Ruling Case Law all agree that such is the interpretation of the jurisdictions upon which the question has been passed. Nothing, in my opinion, could be accomplished by further quotations from decisions and the text books mentioned. Since all the decisions to which I have been cited and all of which I have been able to find are unanimous in their interpretation of similar statutes and the reasons given by the respective courts of such holdings are sound, I conclude that inasmuch as plaintiffs' alleged contract was admittedly oral, they were not entitled to maintain their suit, and the court did not err in dismissing their complaint.

The majority saw fit to rewrite its opinion after receiving my dissent in order to try to explain the pronouncement appearing in Heyn v. Philips, supra, and McCarthy v. Loupe, supra. However, I am satisfied with the reasoning announced in both opinions, as well as what was said in Carkonen v. Alberts, supra, and further discussion on this point need not be pursued further.

We do not have the same factual situation which confronted the court in Stromerson v. Averill, 22 Cal.2d 808, 141 P.2d 732, 737, cited by the majority. In that case there was a contract upon which a constructive trust could be declared, whether enforceable or not. In the case at bar there was no contract. If there had been one, even if unenforceable, it would have been the basis for a constructive trust. It is interesting to note the observation made by the plaintiffs in their brief on page 17, which reads: *"In fact, there was no enforceable agreement, whether oral or in writing,* until Dunn contacted the owners as to the terms of the sale."

In other words there was no meeting of the minds, no consideration, no mutuality of agreement nor mutuality of obligation.

Could it be said that an agency was created by the mere allegations appearing in the complaint "that the plaintiffs requested the defendant, Dunn, to attempt to

purchase the land in question for them or to ascertain the price wanted for it," so as to give rise to a constructive trust in favor of the plaintiffs? I believe not.

Judge Traynor (dissenting) in Stromerson v. Averill, supra, said: "If there was no agency there could be no trust under the authorities relied upon in the majority opinion."

It follows from what has been said that I think the judgment should be affirmed. The majority holding otherwise, I dissent.

COMPTON, J., concurs.